**PUBLISHED**

**Filed: May 24, 2004**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

FERMAN SHALIEHSABOU,
                    *Plaintiff-Appellant,*

v.

HEBREW HOME OF GREATER
WASHINGTON, INCORPORATED,
                    *Defendant-Appellee.*

No. 03-1314
(CA-02-284-AW)

### ORDER

Appellant filed a petition for rehearing en banc.

A member of the Court requested a poll on the petition for rehearing en banc. The poll failed to produce a majority of the judges in active service in favor of rehearing en banc.

Judges Luttig, Michael, Motz and King voted to rehear the case en banc. Chief Judge Wilkins and Judges Widener, Wilkinson, Niemeyer, Williams, Traxler, Gregory, Shedd and Duncan voted against rehearing en banc. Judge Williams wrote an opinion respecting the denial of rehearing and Judge Luttig wrote an opinion dissenting from the denial of rehearing.

The Court denies the petition for rehearing en banc.

Entered at the direction of Judge Williams.

For the Court,

/s/ Patricia S. Connor
Clerk

WILLIAMS, Circuit Judge, respecting the denial of rehearing en banc:

The points raised by my colleague in dissent from the denial of rehearing en banc are, in essence, responses to the panel opinion, to which I refer the reader. *See Shaliehsabou v. Hebrew Home*, 363 F.3d 299 (4th Cir. 2004). I see no reason to elaborate further at this late point in time. *See*, *e.g.*, *Jones v. Buchanan*, 325 F.3d 520, 538-39 (4th Cir. 2003) (Luttig, J., dissenting) ("[T]he formal release of an opinion of law on behalf of the court is the final step in the court's deliberative process, not the first or merely another along the way toward the final decision.").

LUTTIG, Circuit Judge, dissenting from the denial of rehearing en banc:

In a landmark opinion, which the majority does not even realize to be such, the majority holds that Ferman Shaliehsabou, an employee compensated for his work in "activities performed for a common business purpose," is beyond the coverage of section 7(a) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a), because he falls within the terms of a "ministerial" exception to the Act's otherwise expansive definition of the term "employee." No court has ever excluded an employee from the coverage of the FLSA on this basis. No court of appeals has ever done so. No district court has ever done so.

Indeed, neither this court, nor any other appellate court, has ever held that a "ministerial" exemption to the FLSA exists in any prior decision. Our court seemed to assume that one existed in *Dole* v. *Shenandoah Baptist Church*, 899 F.2d 1389 (4th Cir. 1990). But in that case we did not even state that such an exemption exists, much less adopt such an exemption. *Id*. at 1396-97 (noting that employer argued that employees fell within ministerial exemption to FLSA, dis-

cussing derivation of exemption, but never adopting such an exemption). And we certainly did not so hold: the court rejected the argument that the employees in that case would fall within any such exemption.

It is for good reason that no court has ever held there to be a "ministerial" exception to FLSA's coverage. The exemption of "ministerial" employees from the protections of the FLSA — which the majority recognizes and construes broadly in its opinion — does not find a single word of support in the text of the Act or in the Labor Department's rules and regulations interpreting it. As such, the majority's recognition of the exemption flies in the face of the Supreme Court's express direction that "[t]o extend an exemption to other than those clearly and plainly within its [the FLSA's] terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people." *See A. H. Phillips, Inc.* v. *Walling*, 324 U.S. 490, 493 (1945).

For these reasons, which I set forth in detail below, I dissent from the court's refusal to rehear this case en banc.

I.

A.

Although the majority does not acknowledge the novelty of its holding, the "ministerial" exception to the definition of "employee" on which it rests its exclusion of Shaliehsabou, has no basis in the statutory text of the FLSA. The Act defines "employee" in "exceedingly broad" terms, *see Tony & Susan Alamo Found.* v. *Secretary of Labor*, 471 U.S. 290, 295 (1985), to "mean any individual employed by an employer," 29 U.S.C. § 203(e), and the term "employ" in similarly broad terms to mean "to suffer or to permit to work." 29 U.S.C. § 203(g). Thus, where an individual is "suffered or permitted to work" by an employer in expectation of compensation for that work, he is an "employee." *See Alamo Found.*, 471 U.S. at 302. As the Supreme Court has made clear, "the test for employment under the Act is one of economic reality," *id.* at 301, *i.e.* whether the persons in question undertook the covered activities "in expectation of compensation," *see id.* at 302. The fact that an individual is a "ministerial" employee or

that his primary duties are religious in nature has no bearing on this determination.

The "ministerial exemption" also has no basis in any of the dozens of statutory exemptions from the FLSA included in the Act itself. Despite the breadth of the FLSA's definition of "employee," the FLSA specifically provides that the term "does not include" certain agricultural employees, 29 U.S.C. § 203(e)(3), and volunteers for state public agencies, § 203(e)(4). In addition, the Act expressly exempts from its coverage "executive, administrative, and professional" employees, 29 U.S.C. § 213(a)(1), agricultural employees, § 213(a)(6), babysitters, § 213(a)(15), computer programmers and software engineers, § 213(a)(17), newspaper deliverers, § 213(d), and even certain home wreath makers, *id.*, among others. *See also* 29 U.S.C. §§ 213(a)(1)-(17), 213(b)(1)-(30), 214(h)-(j). But it does not exclude "ministerial" employees from the definition of "employee" and it provides no exemption for "ministerial" employees. *See Powell* v. *United States*, 339 U.S. 497, 517 (1950) (providing that the FLSA's "specificity in stating exemptions strengthens the implication that employees not thus exempted . . . remain within the Act").

In sum, the FLSA is completely bereft of any language that even conceivably could be construed to create the "ministerial exception" to the definition of "employee" recognized, and relied upon, by the majority. For this reason alone, the majority's holding is in obvious conflict with a long line of Supreme Court precedent, directing that the FLSA be construed "liberally to apply to the furthest reaches consistent with congressional direction," *Alamo Found.*, 471 U.S. at 296, and exemptions from its coverage strictly limited to those "clearly and plainly within its terms and spirit." *A. H. Phillips, Inc.*, 324 U.S. at 493; *see also Powell* v. *United States*, 339 U.S. at 517. As the Court has explained many times, "[w]hen Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States* v. *Johnson*, 529 U.S. 53, 58 (2000); *TRW, Inc.* v. *Andrews*, 534 U.S. 19, 28 (2001); *Andrus* v. *Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980).

And what is more, even were one concerned about the FLSA's regulation of religious activities, the recognition of a "ministerial"

exemption to the term "employee" would not be necessary. As the Hebrew Home admits in its Response to Shaliehsabou's Petition for Rehearing, "most of the 'employers' of [ministerial employees] (e.g. churches) are not covered under the FLSA because they are not 'enterprises engaged in commerce or the production of goods for commerce.' 29 U.S.C. § 203(r)." Appellee's Response to Petition for Rehearing *En Banc* at 2; *see also id*. at 6 ("The scarcity of reported decisions is undoubtedly due to the fact that the vast majority of 'ministerial' personnel are employed by institutions — such as churches — that are not FLSA-covered 'enterprises.'"). And, even where religious organizations are "engaged in commerce," the FLSA, by its own terms, "reaches only the 'ordinary commercial activities' of [those] organizations and only those [employees] who engage in those activities in expectation of compensation." *Alamo Found.*, 471 U.S. at 302 (citing 29 C.F.R. § 779.214). Quite clearly then, even absent a judicially-created "ministerial" exception, the Act *does not* cover employees engaged in the vast majority of activities that religious organizations perform.

In this case, however, Congress has provided unequivocally that the activities of the Hebrew Home at issue here, activities performed "in connection with the operation of . . . an institution primarily engaged in the care of . . . the aged (regardless of whether or not such . . . institution . . . is operated for profit or not for profit)," "shall be deemed to be performed for a business purpose," and, therefore, subject to the provisions of the FLSA. 29 U.S.C. § 203(r)(2). This provision may not extend to *all* employees of the Hebrew Home; for instance, it may be held that a rabbi does not act "in connection with the *operation*" of the Home because he works in a purely spiritual capacity and not "in connection with" any of the Home's operational activities. But, as both the majority and the Hebrew Home fully acknowledge, the activities performed by Shaliehsabou are on the other side of this divide because preparation of food in which a *mashgiach* participates, unlike the spiritual work of a rabbi, clearly is undertaken "in connection with" the *operation* of the Hebrew Home. *See* 29 U.S.C. § 203(r)(2); 29 C.F.R. § 779.214.

## B.

The basis for the majority's holding that "ministerial" employees are not "employees" within the meaning of the FLSA is a single exchange on the House floor during a 1966 debate over an amendment to the definition of the term "enterprise" in a proposed reform bill to the Act.[1] *See* Slip Op. at 9; *Shenandoah Baptist Church*, 899 F.2d at 1396. While the exchange unquestionably demonstrates that one (and possibly even two) Members of the House believed that "members of a religious order" were not "employees" within the meaning of the Act, it fails miserably as an expression of congressional intent. As both this court and the Supreme Court have recognized numerous times, "[t]he remarks of individual legislators, even sponsors of legislation, . . . are not regarded as a *reliable* measure of congressional intent." *Roy* v. *County of Lexington, South Carolina*, 141 F.3d 533, 539 (4th Cir. 1998); *West Virginia Univ Hosp., Inc.* v. *Casey*, 499 U.S. 83, 98-99 (1991); *Weinberger* v. *Rossi*, 456 U.S. 25, 35 (1982). This is especially true in a case such as this one, where the meaning of the statutory text is perfectly clear, *see*, *e.g.*, *Bath Iron*

---

[1]*Shenandoah Baptist Church* quoted the following exchange, which the majority credits in its opinion for providing the foundation for a "ministerial exemption":

Mr. PUCINSKI. Let us consider a parochial elementary school, in which the nuns do the work in the cafeteria. Would they have to be paid a minimum wage?

Mr. COLLIER. No, they would not be covered.

Mr. BURTON of California. Mr. Chairman, will the gentleman yield?

Mr. COLLIER. I am delighted to yield to the gentleman from California.

Mr. BURTON. As I understand, it is not the gentleman's intention to include members of a religious order under the definition of an employee, and therefore a nun would not be considered an employee. Therefore, a minimum wage would not be required to be paid a nun. Am I correct in my understanding of the gentleman's intention?

Mr. COLLIER. That is correct. I did not intend to cover them.

*Shenandoah Baptist Church*, 899 F.2d at 1395 (quoting 112 Cong. Rec. 11371 (1966)).

*Works Corp.* v. *Director*, 506 U.S. 153, 166 (1993); *Regan* v. *Wald*, 468 U.S. 222, 237 (1984); *Pennsylvania R.R. Co.* v. *Internat'l Coal Mining Co.*, 230 U.S. 184, 199 (1913); the debate in which the relevant exchange occurred did not concern the term it is offered to modify;[2] and Congress modified the definition of the term at issue immediately following the debate in which the relevant exchange took place, but not in the way suggested by the exchange.[3] *See* 29 U.S.C. § 203(e)(3), Pub. L. 89-601.

Nevertheless, apparently premised on this single exchange, the Wage and Hour Division of the Labor Department has taken the position in its *Field Operations Handbook* that,

> Persons such as nuns, monks, priests, lay brothers, ministers, deacons, and other members of religious orders who serve pursuant to their religious obligations in the schools, hospitals, and other institutions operated by their church or religious order shall not be considered to be 'employees.'

---

[2]At the time of the exchange, Congress was debating whether to amend the term "enterprise," in a proposed reform to the FLSA, to include public and private elementary and secondary schools; it was not considering the meaning of the term "employee," in which the majority locates a "ministerial exemption." Thus, Congress' eventual adoption of the amendment, expanding the definition of "enterprise," indicated nothing whatsoever about whether Congress shared the view of the sponsor of the amendment on the proper construction of the term "employee." Indeed, it is doubtful that many, if any, of the other Members of Congress who voted on the amendment were even aware that the exchange had taken place.

[3]After Congress adopted the amendment adding elementary and secondary schools to the proposed reform of the FLSA, it enacted into law the entire bill of which it became a part. *The enacted legislation to the FLSA carved out certain exceptions from the otherwise expansive definition of "employee," but, again, included no exception for "ministerial" employees or members of a religious order. See* 29 U.S.C. § 203(e)(3), Pub. L. 89-601. Put another way, immediately following the debate in which the exchange relied upon by the majority took place, Congress voted to limit the scope of the term "employee," but it did not adopt the exclusion of "ministerial" employees suggested in the exchange.

*See Field Operations Handbook* (*FOH*), Wage and Hour Division, U.S. Dep't of Labor, § 10b03 (1993). This assertion ultimately provides little support for the existence of such an exception to the definition of "employee," however. The Supreme Court has squarely held that positions taken solely in enforcement manuals, such as the *Field Operations Handbook*, are not entitled to "*Chevron*-style deference."[4] *See Martin* v. *Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157 (1991) (providing that the Labor Department's Field Operations Manual for OSHA is not entitled to *Chevron* deference); *Christensen* v. *Harris County*, 529 U.S. 576, 586 (2000) (explaining that "interpretations contained in policy statements, agency manuals, and enforcement guidelines . . . do not warrant *Chevron*-style deference"). They are entitled to respect, but "only to the extent that [they] ha[ve] the power to persuade."[5] *Christensen*, 529 U.S. at 586. The *Handbook* provides no rationale at all for its exclusion of "members of religious orders" from the FLSA's broad definition of "employee," and, therefore, has no persuasive power beyond the exchange on the House floor on which it was based.

---

[4]Even were we required to accord positions taken in the *Field Operations Handbook* deference under *Chevron, U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we could not do so here because, as detailed above, this interpretation is clearly forbidden by the plain language of the Act, *id*. at 842-43, and, assuming it ever could, *see I.N.S.* v. *Cardoza-Fonseca*, 480 U.S. 421, 452-53 (1987) (Scalia, J., concurring), the legislative history in this case does not approach the level of certainty necessary to support an agency interpretation in the face of such statutory clarity. *Ante* at 4-5.

[5]By the Department of Labor's own account, the *Handbook* is "not used as a device for establishing interpretative policy." *See Field Operations Handbook*, Foreword at 1; *United States* v. *Mead Corp.*, 533 U.S. 218, 230 (2001). The interpretations announced therein are not developed after notice-and-comment rulemaking, *see Mead Corp.*, 533 U.S. at 230, and, as the interpretation included in the *Field Operations Handbook* conclusively demonstrates, are not intended as part of the Labor Department's official rules and regulations — an intention confirmed by the fact that the Labor Department's official regulations, as expressed in the Federal Register and the Code of Federal Regulations, provide no similar exemption for "ministerial employees." Rather, they are meant only to provide guidance for employees of the Wage and Hour Division charged with enforcing the FLSA.

In short, there is no foundation for a "ministerial exemption" to the FLSA in the text of the Act itself — either in its definition of "employee" or in the many, statutory exemptions from its coverage — or in the Labor Department's rules and regulations, interpreting it. And the minimal support that the exemption does find in the legislative history and the Labor Department's *Field Operations Handbook* only underscores the weakness of the legal basis for the exemption.

## II.

And yet, the majority not only accepts such an exemption from the FLSA without so much as questioning the soundness of its foundation, but expands the contours of the exemption far beyond that which even the exemption's shaky foundation can support. In so doing, the majority rejects the only conceivable basis for a ministerial exemption in sources related to the Act itself, and, instead, adopts wholesale the contours of the *constitutionally-required* exception of "ministerial" employees from the coverage of Title VII and other civil rights laws.

### A.

Although it lacks any credible support in the FLSA, the exemption of "ministerial" employees from the FLSA adverted to in the exchange on the House floor and described by the Labor Department's *Field Operations Handbook*, *see ante* at 3-8, is, at least, narrow. *See also Shenandoah Baptist Church*, 899 F.2d at 1397 n.15. The exchange on the House floor, which gave rise to the exemption, suggested (at most) that "members of a religious order" would not be considered to be "employees" under the FLSA. *See* note 2. Even more narrowly, the exemption detailed in the *Field Operations Handbook*, and based on this exchange, provided that, "[1] members of religious orders who [2] serve pursuant to their religious obligations [3] in the schools, hospitals, and other institutions operated by their church or religious order shall not be considered to be 'employees.'" *FOH*, § 10b03.

Though the majority does not even realize that it does so, the "ministerial exemption" it embraces in its opinion simply ignores these sources from the FLSA and, thereby, eviscerates the limitations that they place on the scope of a "ministerial" exemption from the Act. To

fall within the terms of the "ministerial" exemption adopted by the majority, an employee need not be a "member of a religious order," as the exchange on the House floor indicates he would, or "serve pursuant to his religious obligation," *see FOH* at § 10b03, or work in an "institution[ ] *operated* by [his] church or religious order," as the *Field Operations Handbook* requires. Rather, the majority holds that, so long as (1) an employee's "primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship," *see* Slip Op. at 10, and (2) that employee is employed by a "religiously-affiliated" institution "marked by clear or obvious religious characteristics," *see* Slip Op. at 16, he is exempt from the coverage of the FLSA.

In application, the relative difference in scope between the exemption for employees whose "primary duties" are religious in nature adopted by the majority and that described on the House floor and in the *Field Operations Handbook* is breathtaking. Applying the "ministerial" exemption from the Title VII context, which is embraced by the majority, courts have excluded employees of "religiously-affiliated organizations," as far afield as non-ordained faculty at a seminary, *EEOC* v. *Southwestern Baptist Theological Seminary*, 651 F.2d 277, 283 (5th Cir. 1981); professors of religion at religiously-affiliated universities, *EEOC* v. *Catholic Univ.*, 83 F.3d 461 (D.C. Cir. 1996); press agents and other employees charged with the distribution of a religious message, *Alicea-Hernandez* v. *Catholic Bishop of Chicago*, 320 F.3d 698 (7th Cir. 2003); choir directors and part-time music teachers, *EEOC* v. *Roman Catholic Diocese of Raleigh*, 213 F.3d 795, 800 (4th Cir. 2000); *Starkman* v. *Evans*, 198 F.3d 173 (5th Cir. 1999); and chaplains in religiously-affiliated hospitals, *see Scharon* v. *St. Luke's Episcopal Presbyterian Hosp.*, 929 F.2d 360 (8th Cir. 1991). And in this case the majority excludes Shaliehsabou, an employee charged with supervising the preparation of foods in the kitchen of a nursing home to ensure that those foods are in compliance with Jewish dietary laws. Needless to say, none of these employees would have been excluded had the employer been required to demonstrate, as the Department of Labor's *Field Operations Handbook* mandates, that the employee in question was a member of a religious order, serving pursuant to a religious obligation, and that the

employer was not simply affiliated with a religious organization but operated by it. *See FOH*, § 10b03.

While the majority characterizes its holding that the "ministerial exemption" to the FLSA is "coterminous in scope" with that recognized to Title VII as a "common sense approach" to construing the two exemptions, Slip Op. at 10, even a cursory review of the grounds for such a holding reveals it to be anything but. Most fundamentally, the legal foundation for a "ministerial" exemption to the FLSA, such as it is, is plainly unrelated to the basis on which the exemption of "ministerial" employees from the coverage of Title VII rests; and this distinction *requires* that the two exemptions be interpreted differently. As the majority acknowledges, "the Title VII ministerial exception is based on constitutional principles and not on 'congressional debate' and Labor Department guidelines as is the FLSA exception." Slip Op. at 10. It is clear from the discussion above, *ante* at 7-9, that the "congressional debate and Labor Department guidelines," on which a "ministerial exemption" to the FLSA, if one exists, must be based, describe an exemption the narrow terms of which *cannot be reconciled with* the expansive scope of the exemption compelled by constitutional concerns in the Title VII context and adopted by the majority for the FLSA.[6] Therefore, to hold, as the majority does, that the two exemptions are coextensive in scope, is not merely to set the contours of the "ministerial exemption" to the FLSA arbitrarily, though it is that; it is to exaggerate the scope of the exemption to such an extent that it is demonstrably at odds with even the highly questionable grounds that give rise to it in the first place.

B.

The reasons the majority provides in support of its holding that the

---

[6]Underlining this conflict in the substantive content of the two respective exemptions are the irreconcilable principles that animate their construction. Whereas it is "well-settled" that exemptions to the FLSA, including, if it exists, the "ministerial" exemption, are to be narrowly construed, *see*, *e.g.*, *Mitchell* v. *Kentucky Finance Co.*, 359 U.S. 290, 295 (1959); *Shenandoah Baptist Church*, 899 F.2d at 1397, "the ministerial exception to Title VII is robust where it applies," *Roman Catholic Diocese*, 213 F.3d 795, 801 (4th Cir. 2000).

two exemptions are coextensive only highlight that holding's indefensibility.

   The majority's *primary* argument in support of its holding that the two exemptions are coterminous is that "we implicitly have held" such already. Slip Op. at 10. It is not even arguable that we have held such, however — even "implicitly." The majority reasons that,

> we have relied on Title VII ministerial exception cases in [*Shenandoah Baptist Church*], and we have cited both [*Shenandoah Baptist Church*] and Title VII cases together in support of the proposition that "[t]he ministerial exception operates to exempt from the coverage of various employment laws the employment relationships between religious institutions and their 'ministers.'"

Slip Op. at 10 (citing *EEOC* v. *Roman Catholic Diocese of Raleigh, N.C.*, 213 F.3d 795, 800 (4th Cir. 2000)) (emphasis added). The precedent relied upon by the majority suggests nothing of the sort. First, in *Shenandoah Baptist Church*, we *did not* "rely on Title VII ministerial exception cases" for our holding; in fact, we did not even discuss such cases other than to explain that the two Title VII cases identified by the employer were factually distinct and, therefore, irrelevant. *See Shenandoah Baptist Church*, 899 F.2d at 1396; *id*. at 1396 n.13. The majority's other purported proof, the inclusion of *Shenandoah Baptist Church* in a string citation of cases in support of the proposition that "the ministerial exception operates to exempt from coverage of various employment laws the employment relationships between religious institutions and their 'ministers,'" Slip Op. at 10, is even less persuasive. The case in which the citation appears, *Diocese of Raleigh*, was a Title VII case, and neither the scope — nor, for that matter, the existence — of a "ministerial" exemption to the FLSA were even before the court. It goes without saying that *dicta* in such a case cannot impart to *Shenandoah Baptist Church* a meaning that it cannot support on its own terms. Thus, the majority's insistence that our prior precedent required its holding that the ministerial exemption to the FLSA is coterminous with the exemption to Title VII cannot be supported by the evidence that it relies upon.

Next, the majority suggests that it must construe any exemption from the FLSA for "ministerial" employees to be coextensive with that for Title VII in order to "avoid answering a difficult constitutional question — *i.e.*, whether the First Amendment would otherwise compel an exception to the FLSA coextensive with that recognized as constitutionally mandated in the Title VII context." Slip Op. at 11.[7] This passing suggestion cannot be taken seriously. Even if there were "serious constitutional concerns" about the application of the FLSA to "ministerial" employees of the Hebrew Home, it would not be open to the majority to rewrite the FLSA to avoid those constitutional problems in this case. As the Supreme Court has recognized time and again, "the canon of constitutional avoidance has no application in the absence of statutory ambiguity." *See United States* v. *Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 494 (2001); *Rayburn*, 772 F.2d at 1166.

But, here, it is perfectly clear that the application of the FLSA to employees like Shaliehsabou at the Hebrew Home does not raise "serious constitutional concerns" in the first instance, which is doubtless why Hebrew Home did not even suggest as much in its brief to the court. The Supreme Court has explicitly held that the application of the record-keeping provisions of the FLSA to religiously-affiliated organizations such as the Hebrew Home, engaged in "commercial activities undertaken with a business purpose," "bear[s] no resemblance to the kind of government surveillance the Court has previously held to pose an intolerable risk of government entanglement with religion." *Alamo Found.*, 471 U.S. at 305; *Shenandoah Baptist*

---

[7]The majority also offers that construing the two exemptions to be coterminous "creates continuity between the FLSA and Title VII, two employment laws of general applicability," Slip Op. at 11, and, similarly, that "courts are [ ] familiar and comfortable with examining the duties of an employee when determining the scope of exceptions under the FLSA." Slip Op. at 11. The majority does not attempt to explain the relevance of these observations to the proper construction of the exemption to the FLSA, however, and it is difficult to even imagine what role they would play. Neither "continuity" between exemptions in the FLSA and Title VII, nor the similarity of exemptions within the FLSA, would be desirable in the least where such comes at the cost of fidelity to congressional intent.

*Church*, 899 F.2d at 1399 (same). This holding would apply equally to the application of the FLSA's overtime provisions. Like the imposition of the sales and use tax at issue in *Jimmy Swaggart Ministries v. Board of Equalization of California*, 493 U.S. 378 (1990), the requirement that the Hebrew Home pay employees, like Shaliehsabou, overtime does not require the government — or the court — to question the Hebrew Home's religious beliefs, inquire into the religious nature of the activities that Shaliehsabou performs, or to become involved in any way in the governance or functioning of the institution. *See Jimmy Swaggart Ministries*, 493 U.S. at 395-97. In fact, as the Court observed in *Jimmy Swaggart Ministries*, it is ironically the majority's theory, "under which government may not [apply the terms of the FLSA to] 'religious core' activities but may [apply the FLSA to] 'nonreligious' activities," that "require[s] government to . . . 'determine which [activities] are religious and which are secular.'" *Id*. at 396-97.

### III.

In sum, the majority recognizes an exemption from the FLSA for "ministerial" employees without support in the text of the Act and in direct violation of Supreme Court precedent — and without even a hint of recognition that it does so. Then, equally unaware, it vests that exemption with a life of its own, untethering the scope of the exemption from the only (precarious) basis for its existence and holding it instead to be coextensive with the unrelated exception from Title VII for "ministerial" employees.

Because the court's novel holding is unsupportable on any ground that I can imagine, I would rehear the case en banc, and I dissent from the full court's unwillingness to do so.